J-S68002-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ASHA JONES | : | |
| | : | |
| Appellant | : | No. 1203 WDA 2018 |

Appeal from the Judgment of Sentence Entered March 19, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0007647-2017

BEFORE:  GANTMAN, P.J.E., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:          FILED FEBRUARY 04, 2020

Asha Jones (Jones) appeals from the judgment of sentence imposed by the Court of Common Pleas of Allegheny County (trial court) after her bench trial convictions for burglary and conspiracy.  On appeal, she challenges the sufficiency of evidence for both convictions.  After review, we find sufficient evidence for conspiracy but vacate her burglary conviction and sentence and remand for resentencing.

I.

On March 24, 2017, around 2:00 a.m., two men used a key to enter the front entrance of a McDonald's in downtown Pittsburgh.  They went to the circuit breaker to turn on the lights and opened the store's electronic safe by

_____

[*] Retired Senior Judge assigned to the Superior Court.

using a magnetic key fob and pin code. The two men stole about $4,600 and then left after being inside for only ten minutes. Two hours later, the opening manager discovered the emptied safe and called the police.

The police viewed surveillance footage of the burglary but could not identify the two men. They did, however, find two key fobs near the safe. One belonged to the general manager, Kiesha Wiley (Wiley); the other belonged to Jones, who was a shift manager and had worked the day before. Wiley called the safe company and confirmed that the burglars used Jones's key fob to open the safe. After the burglary, Jones never showed up for work again nor did she give notice that she was quitting. She returned her front entrance key a few weeks later but did so only after being contacted by the store's owner. She was eventually charged with burglary (not adapted for overnight accommodations, no person present) and conspiracy to commit burglary.[1]

At Jones's bench trial, Wiley testified that neither the circuit breaker nor the safe could be seen by customers, implying that the burglars had advance information. Wiley also explained that opening the safe required entering a four-digit pin that was unique to each key fob. Each shift manager was assigned their own key fob and was not to share it with anyone else; if one

_____

[1] 18 Pa.C.S. §§ 3502(a)(4), 903(a)(1). Both counts were second-degree felonies. 18 Pa.C.S. § 3502(a)(c)(2)(i).

was stolen or lost, then it was to be reported to Wiley so it could be deactivated. However, Jones had never reported hers as being lost or stolen.

Jones did not testify but did call Assata Liddell (Liddell), who worked at McDonald's at the time of the burglary. She testified that shift managers would often borrow each other's key fob and leave it near the safe. All shift managers, therefore, knew each other's pin code. Jones contended that this explained how her key fob could have come to be used in the burglary. Finding this claim unpersuasive, the trial court found Jones guilty of both offenses and sentenced her to two years' probation for burglary and no further penalty for conspiracy. After the denial of post-sentence motions, Jones appealed to raise sufficiency challenges to both convictions.[2]

_____

[2] In reviewing the sufficiency of the evidence, our standard of review is as follows:

> The standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom is sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element beyond a reasonable doubt by means of wholly circumstantial evidence.

> The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record. Therefore, we will not disturb the verdict unless the evidence is so weak and inconclusive

II.

A.

We address Jones's conspiracy conviction first.  Conspiracy is defined in the Crimes Code as follows:

> (a) Definition of conspiracy.--A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
>> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>>
>> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903(a).

To sustain a conviction for criminal conspiracy, "the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy."  Commonwealth v. Fisher, 80 A.3d 1186, 1190 (Pa. 2013) (citation omitted).

> [T]he essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular

_____

> that as a matter of law no probability of fact may be drawn from the combined circumstances.

Commonwealth v. Vogelsong, 90 A.3d 717, 719 (Pa. Super. 2014) (citations and quotation marks omitted).

> criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

Commonwealth v. Johnson, 180 A.3d 474, 479 (Pa. Super. 2018) (citation omitted).

Preliminarily, the circumstances of the crime suggested that the burglars conspired with someone working at McDonald's: they had a front entrance key; they knew where to go for the circuit breaker and the safe; they knew how to use the circuit breaker to turn on the lights; and they had a key fob for the safe and knew its unique four-digit pin code. All of this was sufficient to prove that the burglars conspired with someone who worked at McDonald's; the only question left was whether it was Jones and not someone else.

Viewing the evidence in the light most favorable to the Commonwealth, there was sufficient evidence to conclude that Jones conspired with the burglars. That it was her key fob and not some other manager's used in the burglary directly links her to the crime. In the absence of an explanation for why her key fob was used to open the safe—especially since it had never been reported stolen or missing—the trial court could conclude that Jones gave it to the burglars along with her pin code. In this sense, this case is similar to

those where the defendant's fingerprints are found at the scene of a burglary. In those instances, this Court has found that unless there is a credible innocent explanation for how the fingerprints were at the scene of a burglary, then the factfinder has sufficient evidence to conclude that the defendant was involved in the burglary. See, e.g., Commonwealth v. Donohue, 62 A.3d 1033, 1037 (Pa. Super. 2013) (finding sufficient evidence to convict defendant of burglary where his fingerprints were found on a soda bottle of a private home that was burglarized).

Additionally, Jones never showed up for work after the burglary.[3] Because this occurred immediately after the crime, the trial court could infer from the timing of Jones quitting her job that it was connected to and not coincidental to the crime, thus evidencing a consciousness of guilt. Further, the fact that Jones never gave notice that she was quitting could, viewed in the light most favorable to he Commonwealth, be inferred as evidence of her involvement in the burglary. Taken together, these facts make any potential innocent explanation for her key fob being used in the burglary less believable.

Jones argued at trial that it was equally possible that someone else who worked at McDonald's conspired with the burglars. Her basis for this was

_____

[3] Jones notes that Liddell testified that Jones appeared for her regularly scheduled shift after the burglary. However, this was contradicted by Wiley's testimony that Jones did not show for work at all after the burglary, including on March 24, 2017, and the trial court as factfinder was free to so conclude.

Liddell's testimony that the shift managers knew each other's pin codes and would borrow and leave their key fobs near the safe. However, Liddell testified only that this sometimes occurred; she did not testify that Jones left her key fob for another manager the night before the burglary on March 23, 2017. On this point, the relevant evidence was that Jones worked the day shift and that she finished her shift before McDonald's closed that night at 11:00 p.m. Beyond this, there was no evidence that Jones left her key fob for another manager. In the absence of such evidence, the trial court was not precluded, as Jones seems to believe, from convicting her of conspiracy.

Finally, Jones argues that reversal of her conspiracy conviction is compelled by Commonwealth v. Chambers, 188 A.3d 400 (Pa. 2018), and Commonwealth v. Swerdlow, 636 A.2d 1173 (Pa. Super. 1994). Chambers is readily distinguishable, as it involved a street fight with multiple participants. Swerdlow, meanwhile, is a bit more analogous but not enough to compel a different outcome. There, the defendant lived in a house neighboring two homes that were burglarized. The police determined that the burglar, who was a guest at the defendant's home, used a connecting crawlspace. This Court reversed the conspiracy conviction, finding there was no evidence that the defendant agreed with the burglar to rob the neighbors' homes. Absent evidence of such an agreement, it was speculative to conclude that the burglar accessed the neighboring homes with the help of the defendant. See Swerdlow, supra at 1177-78.

Swerdlow is similar in that there is no direct evidence of an agreement between Jones and the burglars. However, in this case, there was evidence that it was Jones's key fob that was used to open the safe, thus directly linking her to the burglary. Combined with the lack of a credible explanation for how her key fob came to be used, as well as her abruptly quitting work, Swerdlow is factually distinguishable.

In sum, we find that there was sufficient evidence to convict Jones of conspiracy based on: (1) her key fob and four-digit pin being used in the burglary; (2) her abruptly quitting her job and not giving notice immediately after the burglary; and (3) the lack of any evidence that she left her key fob out the night before the burglary.

B.

Jones also raises a sufficiency challenge to her burglary conviction. Under the subsection charged in this case, a person commits the offense of burglary if, with the intent to commit a crime, the person "enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense no person is present." 18 Pa.C.S. § 3502(a)(4) (emphasis added). Jones argues that the Commonwealth failed to present sufficient evidence to convict her of burglary, as there was no evidence that she was one of the burglars who entered McDonald's. We agree.

We first observe that there was no real dispute whether she was one of the burglars. Although the Commonwealth did not present the surveillance footage at trial, Pittsburgh Police Detective Patrick Moffatt testified to viewing the footage and that it showed the burglars were men. See N.T., 3/19/18, at 39-40. Because of the surveillance footage, the Commonwealth conceded that there was no direct evidence that Jones was one of the burglars. See id. at 66. Thus, for this Court to sustain the burglary conviction, it would need to be under a theory of vicarious criminal liability. Recognizing this, the Commonwealth urges this Court to sustain the conviction by finding sufficient evidence under accomplice liability. See 18 Pa.C.S. § 306(b)(3) ("A person is legally accountable for the conduct of another person when … he is an accomplice of such other person in the commission of the offense."). We decline to do so.

As Jones notes in her brief, the Commonwealth did not charge her with committing burglary as an accomplice. Instead, in its criminal information, the Commonwealth made the following allegation for burglary:

> [Jones], with the intent to commit a crime therein, entered a building or occupied structure, namely, McDonald's located at 500 Liberty Avenue, Pittsburgh, PA 15222, or a separately secured or occupied portion thereof, that was not adapted for overnight accommodation, in which, at the time, no person was present, in violation of Sections 3502(a)(4) and (c)(2) of the Pennsylvania Crimes Code, Act of December 6, 1972, 18 Pa.C.S. §§ 3502(a)(4) and (c)(2), amended.

Criminal Information, 8/9/17, at 2.

The Commonwealth never sought to amend its information before or during trial, nor did it argue to the trial court that Jones be found guilty of burglary as an accomplice. In fact, the first time that the notion of accomplice liability was raised in this case was by Jones in her Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Despite this being the case, the Commonwealth urges this Court to find sufficient evidence to convict for burglary because this Court can affirm a trial court on any valid basis appearing of record. Jones, however, cites two cases, Commonwealth v. Frey, 412 A.2d 629 (Pa. Super. 1979), and Commonwealth v. Chambers, 188 A.3d 400 (Pa. 2018), that undercuts the Commonwealth's request that we overlook that it never charged Jones as an accomplice for burglary.

In Frey, the defendant was convicted by a jury of unauthorized use of an automobile but the trial court granted an arrest of judgment because he never drove the car. On appeal, the Commonwealth argued that the defendant was convicted as an accomplice, even though he was not charged as one. This Court rejected this argument, noting that the Commonwealth had never requested an accomplice instruction at trial. Consequently, the defendant's conviction could not be sustained on accomplice grounds since he had no notice to defend against such grounds and the jury had not been instructed that it could convict him as an accomplice. See Frey, supra at 630.

Meanwhile, in Chambers, our Supreme Court reversed a panel of this Court which had affirmed a defendant's aggravated assault with a deadly weapon conviction on co-conspiratorial and accomplice liability theories, neither of which had been charged. Finding there was insufficient evidence to establish that the defendant conspired with the person who assaulted the victim, the Chambers majority went on to criticize the panel for finding sufficient evidence to convict on accomplice liability grounds:

> We also find the Superior Court's accomplice liability rationale to be flawed. The panel held that it "agree[d]" with the trial court's holding that Chambers was liable for the mace-spraying woman's actions as an accomplice. But the trial court made no such holding. The trial court's verdict was based upon conspiratorial liability alone, and in no way upon Chambers being an accomplice to the mace-wielding woman. Chambers was not charged as an accomplice, nor did the Commonwealth pursue a conviction upon accomplice liability at trial. In fact, during closing arguments, the prosecutor argued that Chambers attempted to cause serious bodily injury and should be found guilty of aggravated assault as a first-degree felony based upon his own actions.
>
> Not only did the Commonwealth not pursue accomplice liability at trial, it did not do so before the Superior Court either. To the contrary, the Commonwealth conceded that the trial court found Chambers guilty only as a co-conspirator. The notion of accomplice liability only was introduced into the case by Chambers in his Rule 1925(b) statement, presumably as a protective measure to avoid waiver when appealing from the trial court's less-than-clear verdict. The trial court did not explain that its verdict was based upon conspiratorial liability until its Rule 1925(a) opinion. Thus, it was reasonable for Chambers to include accomplice liability in his Rule 1925(b) statement, if for no other reason than to ensure preservation of all potential defenses or issues. However, in point of fact, accomplice liability played no role in the Commonwealth's theory of the case, the closing arguments, the trial court's deliberation, or the actual verdicts here.

Chambers, supra at 414-15. (internal citation to record omitted).[4]

Besides never charging Jones as an accomplice in its burglary count, the Commonwealth never argued that Jones be convicted of burglary as an accomplice, even though there was no direct evidence of her acting as a principal in the burglary. Likewise, the trial court has not stated that it convicted Jones of burglary as an accomplice. Despite this being the case, the Commonwealth requests this Court to do the very thing that the Chambers majority disapproved: find sufficient evidence for the defendant's conviction on uncharged grounds for which there has not been any notice and the trial court did not convict on. As a result, because there was insufficient evidence to convict Jones as a principal in committing the burglary, which is what she was charged with, we reverse her burglary conviction and sentence.

Having found sufficient evidence for conspiracy but not burglary, our decision likely upsets the trial court's sentencing scheme. We, therefore, remand for a new sentencing hearing on Jones's remaining conviction for conspiracy.

Conviction and judgment of sentence vacated for count one (burglary). Conviction affirmed but judgment of sentence vacated for count two

_____

[4] While the Chambers majority did go on to conduct sufficiency review of aggravated assault under accomplice liability, we note that it did so after already concluding that there was insufficient evidence to establish that the defendant was a co-conspirator to the person who used the deadly weapon. See Chambers, supra at 415.

(conspiracy).   Case remanded for resentencing on count two.   Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/4/2020